**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James M. CULLITON, Defendant–**
**Appellant.**

No. 00–10599.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2002.

Filed April 30, 2003.

Richard Staff, Sacramento, CA, for the defendant-appellant.

James P. Arguelles, Assistant U.S. Attorney, Sacramento, CA, for the plaintiff-appellee.

Before GOODWIN, HAWKINS and FISHER, Circuit Judges.

## ORDER

The opinion filed August 22, 2002, and appearing at 300 F.3d 1139 (9th Cir.2002), is WITHDRAWN. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

## OPINION

PER CURIAM.

James Culliton appeals his felony conviction under 18 U.S.C. § 1001 for making false statements on a medical form submitted to the Federal Aviation Administration ("FAA"). Culliton bases his appeal on three legal theories: First, the FAA form is fundamentally ambiguous and therefore the district court should have dismissed the Government's false statement indictment. Second, Culliton's felony conviction resulted from selective prosecution and therefore amounted to a denial of Due Process. Third, the doctrine of primary jurisdiction prevented the district court from presiding over Culliton's indictment until, and unless, the FAA first revoked his medical certification.

We reject all three theories and affirm Culliton's conviction, after a jury trial, for making knowing and willful false statements in a matter within the jurisdiction of the FAA.

## BACKGROUND

James Culliton is an aviation lawyer, a pilot, and a former inspector for the FAA. In August 1995, he reclined in a chair that broke and tipped over, causing him to hit the back of his head against a credenza nearby. Following the accident, Culliton sought treatment from various health professionals, including a primary care physician, an ophthalmologist, and a neurologist, for a variety of medical problems. For almost two years after the accident, Culliton complained of decreased vision in the right eye, occasional double vision, dizziness, nausea, persistent headaches, difficulty with concentration, personality-type changes, and anxiety attack symptoms.

Culliton brought a personal injury action against three defendants responsible for manufacturing and retailing the defective chair. Two of the defendants agreed to settle for $500,000 while the third defendant, Viking Office Products, asserted a defense of insurance fraud and refused to settle. At this point, the parties' accounts of the subsequent events diverge.

Culliton contends that Viking's private detectives convinced a state investigator for the California Department of Insurance to pursue a fraud prosecution through the Sacramento County District Attorney's Office. When the D.A.'s office refused to proceed, the state investigator prevailed upon the U.S. Attorney for the Eastern District of California to prosecute Culliton for false statements made to the FAA about his medical history.

The Government maintains that this prosecution was not "selective." It asserts that Viking originally reported its suspicion of insurance fraud to the county D.A.'s office which, because of lack of funding, referred the matter to the California Department of Insurance for further investigation. In the course of preparing its case, one of the department's investigators learned of Culliton's false statements to the FAA. When the department determined that it would not bring a fraud action, it referred the case to the U.S. Attorney's Office for possible federal prosecution under 18 U.S.C. § 1001. The statute provides in relevant part:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

The basis for the Government's prosecution occurred in June 1997 when Culliton, in the course of obtaining an airman medical certificate, answered "No" to the following three questions contained in FAA Form 8500–8:[1]

> Have you *ever* had or have you now, any of the following? Answer "yes" for every condition you have ever had in your life. In the EXPLANATION box below, you may note "PREVIOUSLY REPORTED, NO CHANGE" only if the explanation of the condition was reported on a prior application for an airman medical certificate and there has been no change in your condition. See instructions page. (Emphasis in original.)

---

1. As the Privacy Act Statement attached to Form 8500–8 explains, "the purpose of the information is to determine whether you meet Federal Aviation Administration medical requirements to hold an airman medical certificate or airman medical and student pilot certificate."

(b) dizziness or fainting spells—Yes or No

    (d) eye or vision trouble except glasses—Yes or No

    (m) mental disorders of any sort: depression, anxiety, etc.—Yes or No

The instructions page provides:

MEDICAL HISTORY–Each item under this heading must be checked either "yes" or "no." You must answer "yes" for every condition you have ever had in your life and describe the condition and approximate date in the EXPLANATIONS box.

If information has been reported on a previous application for airman medical certificate and there has been no change in your condition, you may note "PREVIOUSLY REPORTED, NO CHANGE" in the EXPLANATIONS box, but you must still check "yes" to the condition. Do not report occasional common illnesses such as colds or sore throats.

Even though Culliton recently sought medical treatment for dizziness, vision problems, and anxiety symptoms, *see supra*, he answered "No" to each query recited above. After a four day trial, a jury convicted Culliton of knowingly providing false statements to a federal agency in violation of 18 U.S.C. § 1001 and the court imposed a fine of $5,000. Culliton filed a timely notice of appeal. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and affirm the judgment.

## ANALYSIS

### I. Fundamental Ambiguity of FAA Form 8500–8

Culliton's first argument on appeal is that the district court should have dismissed his indictment because of the "fundamental ambiguity" of FAA Form 8500–8 ("Form") and its questions. This circuit has not yet defined the standard of review for the dismissal of a false statement indictment based on fundamental ambiguity. We need not do so here because the Form is not ambiguous under any standard of review.

■ Generally speaking, the existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution. *See United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir.1987) abrogated on other grounds by *United States v. Wells*, 519 U.S. 482, 486 n. 3, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). It is for the jury to decide in such cases which construction the defendant placed on a question. *See United States v. Slawik*, 548 F.2d 75, 86 (3d Cir.1977). If, however, a question is "excessively vague, or 'fundamentally ambiguous,'" the answer may not, as matter of law, form the basis of a prosecution for perjury or false statement. *Ryan*, 828 F.2d at 1015(citing *United States v. Lighte*, 782 F.2d 367, 375(2d Cir.1986)); *see also United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir.1976) ("Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer was for the jury.").

■ While this court has not had the occasion to consider the effect of fundamental ambiguity in the specific context of providing false statements to a federal agency in violation of 18 U.S.C. § 1001, in *United States v. Boone*, 951 F.2d 1526 (9th Cir.1991), we addressed "ambiguity" in the analogous context of providing false statements to a grand jury or court in violation of 18 U.S.C. § 1623. A question is fundamentally ambiguous when "men of ordinary intelligence" cannot arrive at a mutual understanding of its meaning. *See Boone*, 951 F.2d at 1534 (quoting *Lighte*, 782 F.2d at 375).

Culliton describes the Form's medical history questions as fundamentally ambiguous because they are "unanswerable in

any meaningful way" and "incomprehensible in the context in which they were presented." He argues that the questions "make no sense at all" because "[n]one of us can literally deny a history of dizziness, headaches, vision problems, mental problems, and the like." Underlying these descriptions is his basic contention that because the FAA questions permit different interpretations by the questioner and respondent, they are fundamentally ambiguous and cannot serve as the basis for a false statement prosecution.

■ However, a question is not fundamentally ambiguous simply because questioner and respondent might have different interpretations. Rather, we must consider the context of the question and Culliton's answers, as well as other extrinsic evidence relevant to his understanding of the questions posed in the Form. *See Boone,* 951 F.2d at 1534 ("In evaluating ... the question's ambiguity, the court must consider the context in which the question was asked ....."); *see also United States v. Sainz,* 772 F.2d 559, 562 (9th Cir.1985) ("[W]e must look to the context of the defendant's statement to determine whether the defendant and his questioner joined issue on a matter of material fact to which the defendant knowingly uttered a false declaration."). If Culliton's responses were false as he understood the questions, "his conviction is not invalidated by the fact that his answer to the question[s] might generate a number of different interpretations." *United States v. Swindall,* 971 F.2d 1531, 1553 (11th Cir.1992) (internal quotation marks omitted).

■ Culliton does not claim that he believed his answers were true at the time he filled out the Form. Instead, he claims that he "didn't answer some questions literally because literal answers would have been unreasonable and even impudent." Culliton went so far as to "reasonably interpret[ ] the spirit of the medical questionnaire to relate to facts which may medically disqualify him from flying as a command pilot"—which, under Culliton's interpretation, did not include visual impairment, inability to concentrate, and neurological disorders. Culliton points to no case, and indeed we have found none, that justifies an applicant's unilateral reinterpretation of questions on a governmental form to comport with his own particular goals.

Furthermore, a de novo examination of the Form does not reveal fundamental ambiguity about questions that ask whether a pilot has *ever* had any history of dizziness, vision trouble, or mental disorders. We recognize, and the Government concedes, that the Form's questions are capable of rendering innocent responses objectively false.[2] A respondent might feel compelled to account for dizziness experienced while playing harmless games, vision problems experienced while undergoing routine eye dilation, and mental disorders experienced because of irrelevant traumas. That a respondent might feel compelled to answer "Yes" to each of these questions does not render them "fundamentally ambiguous." Rather, the respondent has the option of explaining his or her answers in a separate space provided on the Form.

2. The FAA has expressed concerns about the possible vagueness of the Form in the past. The Broderick Memorandum, a 1987 FAA document, noted that the FAA needed to "think about changing the form and substance of the questions asked in" Form 8500–8, in part because the "vague, qualitative, and evaluative nature of these questions" has made difficult the prosecution of people in the past. If the FAA sees fit to change the questions, it is well within its domain to do so. This memorandum, however, does not change our conclusion that any vagueness in these questions does not rise to the level of fundamental ambiguity.

■ As for those individuals who answer "no," assuming that the questions were not meant to be read literally, it might indeed be unfair, as Culliton contends, to allow government prosecution for innocent answers that are objectively false. However, the law already provides protection against that possibility. "Perjury requires that a witness believe that the testimony he gives is false." *Lighte*, 782 F.2d at 372; *see also United States v. Matthews*, 589 F.2d 442, 445 (9th Cir.1978) (the critical inquiry is the meaning attached to the question by the accused); *United States v. Lattimore*, 127 F.Supp. 405, 408 n. 10 (D.D.C.1955) ("It does not make any difference whether the statements were in fact true or not—the defendant's belief as to their truth or falsity is the issue.").

In the face of ambiguity, a court may decide as a matter of law to dismiss an indictment so long as the defendant offers an innocent explanation for his testimony. As we have discussed, Culliton has provided no such innocent explanation. The ambiguity he points to in the questions—that read literally they seem to require disclosure of every incident of dizziness or vision trouble, no matter how minor or fleeting— simply does not account for his failure to disclose the far more severe physical and mental impairments that formed the basis of his personal injury action.

Culliton relies heavily on *United States v. Manapat*, 928 F.2d 1097 (11th Cir.1991), in which the Eleventh Circuit held that a prior version of Form 8500–8 was fundamentally ambiguous despite the fact that the defendant's answers to two questions regarding her criminal history were objectively false. However, as the district court correctly pointed out in its order refusing to dismiss Culliton's indictment, *Manapat* concerned a different version of the Form. More importantly, *Manapat* speaks to the ambiguity that resulted when two questions about criminal convictions were interspersed with a string of medical history questions. *See* 928 F.2d at 1102. The court concluded that an applicant might believe that the form was asking about convictions that were related to medical convictions, or that an applicant in good health could check many items on the form without realizing that two of the questions asked about criminal convictions, rather than medical problems. *Id.* at 1101. No such ambiguity exists in this case. The Form, and the questions at issue, deal exclusively with an applicant's medical history. A privacy statement and a detailed set of instructions attached to the Form explicitly state that the purpose of the Form is to establish the applicant's physical fitness to fly. Culliton has failed to demonstrate that the questions he answered falsely are fundamentally ambiguous.

## II. Selective Prosecution

Culliton next urges us to overturn his false statement conviction because it resulted from what he calls the Government's selective prosecution. He contends that "this case would not have been prosecuted as a Title 18 U.S.C. § 1001 case were it not for the underlying suspicion of insurance fraud," and therefore that his prosecution essentially "amounts to prosecutorial abuse and a perversion of any legitimate law enforcement function."

■ This court has employed both a de novo standard and a clearly erroneous standard when reviewing a selective prosecution claim. *See United States v. Wilson*, 639 F.2d 500, 503 n. 2 (9th Cir.1981) (adopting clearly erroneous standard but recognizing that past cases have adopted an implicit de novo standard). Because we hold that Culliton has no viable selective prosecution claim under any standard of review, we need not resolve any purported difference. In cases where invidious selec-

tive prosecution is alleged, we view the evidence in the light most favorable to the government. *See United States v. Cuellar,* 96 F.3d 1179, 1182 (9th Cir.1996).

In our criminal justice system, the executive branch has "broad discretion" to decide whom to prosecute. *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (quoting *United States v. Goodwin,* 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). However, prosecutorial discretion is not unfettered, and selectivity in the enforcement of criminal laws is subject to constitutional constraints. *See id.* "The two elements of a selective prosecution claim are that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive." *United States v. Balk,* 706 F.2d 1056, 1060 (9th Cir.1983) (internal quotation marks omitted). The defendant has the burden of proving both elements. *United States v. Bourgeois,* 964 F.2d 935, 938 (9th Cir.1992).

We examine Culliton's selective prosecution claim with the caveat that the "decision to prosecute is particularly ill-suited to judicial review" because factors such as the "strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte,* 470 U.S. at 607, 105 S.Ct. 1524.

A de novo review of the evidence in the light most favorable to the government does not reveal an impermissible motive driving Culliton's prosecution. While it may be true that the California Department of Insurance suspected Culliton of fraud, it was under an independent obligation to report its findings of Culliton's false statements to the FAA. As the Government correctly points out, there is nothing inappropriate or vindictive about a state law enforcement agency referring potential violations of federal law to federal authorities. *See Elkins v. United States,* 364 U.S. 206, 221, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (in a case involving tainted evidence, the Court emphasized that "[f]ree and open cooperation between state and federal law enforcement officers is to be commended and encouraged.").

### III. Primary Jurisdiction.

Culliton's final argument on appeal is that the district court should have deferred consideration of his false statement prosecution under the doctrine of primary jurisdiction. This circuit has not yet discussed the standard of review for the application of the primary jurisdiction doctrine. Because we can affirm the district court's decision not to invoke the doctrine of primary jurisdiction under de novo review, we find it unnecessary to speculate further on the proper standard in these types of cases.

The primary jurisdiction doctrine provides: "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." *United States v. General Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir.1987) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic No. 99,* 400 U.S. 62, 68, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)). Culliton argues that the district court should have deferred the Government's prosecution under 18 U.S.C. § 1001 until, and unless, the FAA made independent findings of false statements and initiated its own revocation proceedings.

**1082**

■ Whether the doctrine of primary jurisdiction applies in any particular situation depends on "the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in juridical proceedings." *Id.* at 1362(citing *United States v. RCA*, 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959)). Certain factors are "uniformly present" in cases where courts abstain from judicial action on a particular issue pursuant to the primary jurisdiction doctrine. These include Congressional intent to imbue an administrative agency with total responsibility to resolve or address the particular issue and the need for expertise or uniformity in the administration of such a decision. *Id.* at 1363. Furthermore, while "competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient." *Id.* "The particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *Id.*

■ Culliton contends that because the FAA Administrator has the authority to suspend or revoke medical certificates for false statements on FAA forms, it follows that no court can entertain a criminal prosecution based on those same false statements. However, simply because the FAA has the competence to deal with false statements on its applications does not mean that Congress has conferred upon it sole responsibility to penalize false statements, thereby suspending the operation of a criminal statute of general application.

■ Culliton points to 49 U.S.C. §§ 1301 and 1133 as examples of statutes that indicate Congress' intent that the FAA have the "first word" on all aviation matters. There is little in the language and legislative history of these provisions that comes close to substantiating such a sweeping claim. While it is true that the FAA plays a vital and major role in regulating aviation matters, Culliton cannot point to anything in the pertinent statutory or regulatory framework that prevents the Department of Justice from prosecuting an individual for the felony of making false statements to a government agency. Furthermore, while the FAA is competent to determine whether an applicant has made false statements on a certificate form, it is squarely within the province of the Department of Justice to prosecute felonies of perjury and false statements.[3] *See General Dynamics Corp.*, 828 F.2d at 1366(federal criminal litigation is an "executive function within the exclusive prerogative of the Attorney General.") (quoting *In Re Subpoena of Persico*, 522 F.2d 41, 54 (2d Cir.1975)); *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (common law fraud against airline carrier was not within primary jurisdiction of FAA because the "standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts"). Hence, the district court properly proceeded with Culliton's prosecution.

**AFFIRMED.**

**3.** Culliton cites *Twomey v. National Transportation Safety Board*, 821 F.2d 63 (1st Cir. 1987), and *McCarthney v. Busey*, 954 F.2d 1147 (6th Cir.1992), to support his argument that the FAA and the National Transportation Safety Board have internal procedures capable of addressing false statements made by pilots. As we stated, competence to render a particular decision does not, by itself, invoke the doctrine of primary jurisdiction.