**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    18-50410 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00229-CAS-1 |
| v. | |
| FELIX CISNEROS, Jr., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted June 3, 2020
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and KANE,[**] District Judge.

Partial Concurrence and Partial Dissent by Judge Callahan

Following a four-day jury trial, Felix Cisneros, Jr., a former Homeland

Security Investigations ("HSI") special agent for Immigration and Customs

Enforcement ("ICE"), was convicted of: (1) conspiracy to aid and assist an

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

inadmissible alien who had been convicted of an aggravated felony to enter the United States, in violation of 8 U.S.C. § 1327 and 18 U.S.C. § 371 (Count One); (2) acting as an agent of another before a department, agency, or officer in a covered matter affecting the United States, in violation of 18 U.S.C. §§ 205(a)(2) and 216(a)(2) (Count Two); (3) knowingly making a false entry in a record or document with the intent to impede, obstruct, or influence the investigation of a federal matter, in violation of 18 U.S.C. § 1519 (Count Three); and (4) knowingly and willfully making a false, fictitious, or fraudulent statement in a matter within the jurisdiction of the executive branch, in violation of 18 U.S.C. § 1001 (Count Four). In 2013, at the request of a businessman acquaintance who had suspected ties to organized crime, Cisneros secured the return of Santiago Garcia's passport and worked to prevent Garcia's removal from the United States. In pursuing these objectives, Cisneros used his influence to access government officials and convince them that Garcia was a government informant. Cisneros also wrongfully accessed law enforcement records pertaining to the businessman and Garcia. At trial, the Government presented evidence that Cisneros accepted payments totaling over $25,000 in 2015 and 2016, as well as a lavish trip, from an associate of the businessman. On questioning, Cisneros admitted without explanation that he had intervened on Garcia's behalf to obtain the return of his passport and prevent his

removal, and that he had accessed Garcia's records and believed him to be inadmissible and an aggravated felon.

Cisneros appeals his convictions on the bases that sufficient evidence did not support his convictions for Counts One, Two, Three, and Four and that the district court failed to properly instruct the jury as to Count Two. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We vacate Cisneros's Count Two conviction, affirm Cisneros's Count One, Count Three, and Count Four convictions, and remand for resentencing in light of that determination.

1. As an initial matter, Cisneros challenges his Count One conviction on the basis that it is not supported by sufficient evidence. Specifically, Cisneros argues that there was insufficient evidence to support a finding by the jury that he intended to violate 8 U.S.C. § 1327, because evidence was lacking that Cisneros believed Garcia was an aggravated felon when he agreed to assist Garcia's entry into the United States. Cisneros also argues that there was insufficient evidence to support a finding by the jury that his alleged co-conspirators, Garcia and Levon Termendzhyan, formed an agreement with him to violate 8 U.S.C. § 1327. Moreover, he argues that the evidence does not support a finding that Termendzhyan entered into an agreement with Cisneros or that either alleged co-conspirator knew Garcia was inadmissible at the time of the alleged conspiracy's

3                                                                                          18-50410

formation.[1] Cisneros also argues that Wharton's Rule precludes his conviction of conspiracy to assist an inadmissible alien in violation of 8 U.S.C. § 1327 on the basis of an agreement with Garcia.

First, we conclude that because Cisneros challenged the sufficiency of the evidence supporting Count One at the close of evidence and the district court

---

[1] We conclude that Cisneros waived the argument—first asserted after his appeal had been fully briefed—that his Count One conviction should be vacated on the basis that sufficient evidence does not support a conclusion that Garcia or Termendzhyan believed Garcia was an aggravated felon at the time they formed an agreement with Cisneros. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived." (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.7 (9th Cir. 1999))). Although Cisneros's opening brief contains a passing reference to Garcia's belief regarding his aggravated felon status in the "Summary of Argument" section, Appellant's Opening Br. at 22 ("Nor did any evidence indicate that Garcia himself believed he was an aggravated felon or inadmissible . . . ."), this argument is never developed. Cisneros's discussion of the required beliefs of his alleged co-conspirators focuses entirely on the belief that Garcia was inadmissible; aggravated felon status is, in fact, never mentioned in that section of the brief. Further, at oral argument, Cisneros's counsel did not assert that this argument was raised in the briefing but, rather, argued that the panel should address the argument because it presents a pure question of law. However, that argument ordinarily applies to waiver via failure to raise an argument before the trial court, *e.g.*, *Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 888 n.4 (9th Cir. 2002), not failure to brief it appropriately on appeal. And, in any event, the decision whether to address such an argument is discretionary and intertwined with the potential for prejudice to the opposing party. *See id.*

Additionally, we note that Cisneros clarified in his most recent filing with the Court that he is not asserting that *United States v. Feola*, 420 U.S. 671 (1975), requires proof that Garcia was an aggravated felon to support his Count One conviction.

Finally, we note that although the Government initially argued that a conviction for Count One did not require proof that Cisneros believed that Garcia was an aggravated felon, it has since abandoned that argument.

reserved judgment on that challenge, he did not waive his Count One challenge by failing to raise it again in his post-verdict Rule 29 motion. *See United States v. Tisor*, 96 F.3d 370, 380 (9th Cir. 1996) (finding a pre-verdict Rule 29 challenge sufficient to preserve a challenge for appeal where the defendant's post-verdict Rule 29 motion was untimely).

Next, we conclude that there was sufficient evidence presented at trial to support a conclusion by the jury that Cisneros believed that Garcia was an aggravated felon at the time he agreed to assist Garcia's entry into the United States and that Cisneros intended to violate 8 U.S.C. § 1327. First, Cisneros's actions—circumventing the ordinary immigration procedures and contriving an elaborate ruse to assist Garcia in gaining entry into the United States—evinced some basic belief in Garcia's inadmissible status. *See United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201 (9th Cir. 2000) ("In reviewing the sufficiency of the evidence, . . . all reasonable inferences are to be drawn in favor of the government . . . ."). Second, during a recorded conversation in 2017, Cisneros responded in agreement to the proposition that Garcia had been an "ag felon." While a rational juror could have concluded that this response was a mistake or that Cisneros acquired this view after he agreed to assist Garcia in 2013, we must view this evidence in the light most favorable to the prosecution. *See United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc). Accordingly, because we

find that a rational juror could have concluded that Cisneros believed that Garcia was an aggravated felon at the time he formed an agreement to assist Garcia on the basis of this evidence, we conclude that such a belief is supported by sufficient evidence. *See id.* We further conclude that sufficient evidence supports a conclusion that Garcia and Termendzhyan believed that Garcia was inadmissible and that Garcia and Termendzhyan formed an agreement with Cisneros to violate 8 U.S.C. § 1327. Finally, we conclude that Wharton's Rule does not preclude Cisneros's Count One conviction because Wharton's Rule does not apply to statutes like 8 U.S.C. § 1327, which do not include agreement with another party as an element. *See United States v. Castro*, 887 F.2d 988, 996 (9th Cir. 1989) (concluding that Wharton's Rule does not prohibit convictions for both (1) aiding and abetting the misapplication of bank funds and falsification of bank records and (2) conspiracy to commit those crimes on the basis that "[a]iding and abetting does not require an agreement between two parties, a necessary prerequisite for a conspiracy conviction"). Accordingly, we affirm Cisneros's Count One conviction.

2. Second, Cisneros challenges his Count Two conviction on the basis that it is not supported by sufficient evidence. The parties disagree as to the meaning of the term "agent" in 18 U.S.C. § 205(a)(2). We first find, consistent with the conclusion of the Federal Circuit in *O'Neill v. Department of Housing and*

6                                                            18-50410

*Urban Development*, 220 F.3d 1354, 1360-63 (Fed. Cir. 2000), that the common law definition of "agent" applies to 18 U.S.C. § 205(a)(2). Applying the common law definition of "agent" to 18 U.S.C. § 205(a)(2), we conclude that sufficient evidence does not support a conclusion that Cisneros acted as Garcia's agent vis-à-vis United States Customs and Border Protection or other government officials. Although the record supports a finding that Cisneros assisted and aided Garcia in his dealings with government officials with regard to his immigration status, there is no evidence in the record that, even when viewed in the light most favorable to the Government, supports a conclusion that Cisneros acted as Garcia's agent within the term's common law meaning. For example, the evidence does not show that Cisneros acted on behalf of Garcia and that Garcia "ha[d] the right throughout the duration of the relationship to control [Cisneros's] acts." *See* Restatement (Third) of Agency, § 1.01, comment c. Accordingly, we conclude that sufficient evidence does not support Cisneros's Count Two conviction and, therefore, vacate that conviction.

3.      Third, Cisneros challenges his Count Two conviction on the basis that the district court did not provide adequate jury instructions as to the meaning of "agent" in the context of 18 U.S.C. § 205(a)(2). Because we vacate Cisneros's Count Two conviction on the basis of his sufficiency of the evidence arguments, we decline to address his arguments pertaining to the Count Two jury instructions.

4.    Fourth, Cisneros challenges his Count Three conviction on the basis of the sufficiency of the evidence supporting it.  He asserts that sufficient evidence does not support a conclusion that he knowingly falsified the SF-86 form by failing to include Garcia's name in response to question 19, arguing that question 19 is "fundamentally ambiguous" under *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003), and, therefore, cannot serve as the basis for a violation of 18 U.S.C. § 1519 as a matter of law.  Cisneros further argues that sufficient evidence does not support a conclusion that he acted to obstruct or impede an investigation or inquiry by the Government.

We conclude that question 19 is not "fundamentally ambiguous" such that "men of ordinary intelligence" would be unable to "arrive at a mutual understanding" as to the question's meaning in the context faced by Cisneros when he answered it.  *See Culliton*, 328 F.3d at 1078 (quoting *United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991)).  The Government presented evidence that Cisneros and Garcia had extensive sustained communication and interaction of the nature that would permit a reasonable jury to conclude that the two had become close friends.[2]  Although the record of communication between Cisneros and Garcia that was presented at trial ends in January of 2014 and Cisneros answered

---

[2]    For example, Cisneros advised Garcia in regard to the purchase of a playset for Garcia's child and offered to help with its assembly, and Garcia organized a baseball game outing for the two men and their sons.

question 19 in August of that year, we find that this gap is not so long that it would prevent a reasonable factfinder from concluding that the relationship persisted to at least that point. Additionally, we find that the familiar and friendly tone of the communication between Cisneros and Garcia during their recorded interaction nearly two years later in May of 2016, in addition to Cisneros's offer to help Garcia during that interaction, offers further support for the conclusion that Cisneros had a close bond with Garcia when he answered question 19 in August of 2014. We further conclude that sufficient evidence supports the conclusion that Cisneros knowingly falsified the form by failing to identify Garcia in response to question 19. Finally, we conclude that sufficient evidence supports the conclusion that Cisneros did so in order to obstruct or impede an investigation or inquiry by the Government. Accordingly, we find that sufficient evidence supports Cisneros's Count Three conviction and affirm that conviction.

5. Finally, Cisneros challenges his Count Four conviction on the basis that it is not supported by sufficient evidence. Cisneros argues that sufficient evidence does not support the conclusions that his answer to question 19 was false or that he acted with knowledge of the falsity or intent to deceive, advancing arguments similar to those asserted in support of his Count Three challenge, including the assertion that question 19 was "fundamentally ambiguous" pursuant to *Culliton*. He further argues that sufficient evidence does not support a

conclusion that his failure to identify Garcia in response to question 19 was material. We conclude that sufficient evidence supports the conclusions that Cisneros's answer to question 19 was false, that he deliberately and knowingly answered falsely, and that the falsity was material. Accordingly, we conclude that sufficient evidence supports Cisneros's Count Four conviction and affirm that conviction.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**

18-50410

*United States v. Cisneros*, No. 18-50410

Callahan, J., concurring in part and dissenting in part:

I agree with the majority's decision to vacate Cisneros's Count Two conviction on legal insufficiency grounds. I disagree that sufficient evidence was presented to support the remaining convictions and would vacate those as well.

I

In Count One, Cisneros was charged and convicted under 18 U.S.C. § 371, the general federal conspiracy statute, for conspiring to aid or assist an inadmissible alien convicted of an aggravated felony to enter the United States, in violation of 8 U.S.C. § 1327. The Government alleged that Cisneros conspired with two associates, Levon Termendzhyan and Santiago Garcia, to assist Garcia in retrieving his passport from Customs and Border Patrol ("CBP") officials, who had lawfully confiscated it at Los Angeles International Airport. Although Garcia was an inadmissible alien, he was *not* an aggravated felon. Nonetheless, the majority holds that sufficient evidence was presented at trial to support the jury's conclusion that Cisneros conspired to violate § 1327.

I disagree. I would hold that (1) the evidence was insufficient because the Government offered no proof of Garcia's aggravated-felon status; (2) Cisneros's mistaken belief that Garcia was an aggravated felon cannot, by itself, sustain a conviction for conspiracy to violate § 1327; and (3) even if it could, the evidence

offered by the Government that Cisneros harbored such a belief in 2013 was impermissibly speculative. In short, the Government has not shown that Cisneros is guilty of the crime with which he was charged.

A

Section 1327 is an "aggravated version[] of section 1324," which "represents the baseline statute that governs the entry of illegal aliens and alien smuggling." *United States v. Flores-Garcia*, 198 F.3d 1119, 1122 (9th Cir. 2000). Section 1327 "provide[s] enhanced penalties for those who aid and assist particular classes of aliens to enter illegally the United States," including, *inter alia*, aggravated felons. *Id.* In a prosecution under § 1327, the inadmissible alien's aggravated-felon status is an essential element of the offense, even though "the defendant's knowledge of an alien's prior felony conviction is not an element of the offense." *Id.*

The Supreme Court addressed a similar statutory scheme in *United States v. Feola*, 420 U.S. 671 (1975). There, the defendant was charged with conspiring to assault a federal officer, in violation of 18 U.S.C. §§ 371, 111. The Court held that the government must prove that the individual targeted for attack "is in fact a federal officer," an element of the underlying offense, even though the defendant's knowledge of the victim's status is not itself an element. *Id.* at 695–96. By premising liability on the *fact* of the victim's federal-officer status rather than the defendant's knowledge of that status, § 111 places persons who would otherwise

2

violate the law by committing assault at increased risk if they happen to assault (or agree to assault) a federal officer. This generates incentives to find out the status of a would-be victim *before* the assault, "effectuat[ing] the congressional purpose of according maximum protection to federal officers[,]" including "agent[s] acting under cover." *Id.* at 684. The Court noted, "[i]n a case of this kind the offender takes his victim [or would-be victim] as he finds him." *Id.* at 685.

Similarly, § 1327 premises liability on the *fact* of the inadmissible alien's aggravated-felon status rather than the defendant's knowledge of that status. *Flores-Garcia*, 198 F.3d at 1122. The statute "thus places persons who would otherwise violate § 1324 at an increased risk if they happen to aid an alien who is excludable because of a conviction for an aggravated felony." *United States v. Figueroa*, 165 F.3d 111, 119 (2d Cir. 1998). This increased risk, in turn, "generates incentives for § 1324 violators to find out whether they are assisting an alien felon into the country and to avoid aiding aliens in this narrow class." *Id.*

Given this legislative purpose, conspiracies to violate § 1327—like conspiracies to violate § 111—should be understood to embody the same requirement of proof of the underlying status element as cases involving substantive violations of the statute. Indeed, we have previously adopted this reading in at least one unpublished case. *See United States v. Alvarez-Marquez*, 542 F. App'x 543, 544 (9th Cir. 2013) ("[Section] 1327 requires that the defendant

3

conspire to allow, procure, or permit the entry of an alien who is inadmissible *because of an aggravated felony conviction*." (emphasis added)).  As the Supreme Court has stated, "the fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy *all of the elements* of [the underlying substantive] criminal offense.'"  *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) (emphasis added) (alterations in original) (citation omitted).

Here, the endeavor to which Cisneros allegedly committed himself was assisting a specifically identifiable person, Santiago Garcia—not an inadmissible, aggravated felon in the abstract—to retrieve his passport.  Accordingly, the Government was required to prove Garcia's *actual* aggravated-felon status, an element of the underlying offense.  *See id.*; *Feola*, 420 U.S. at 695 (requiring proof that the individual targeted for attack "is in fact a federal officer").  It is undisputed, however, that Garcia has never been convicted of an aggravated felony.  Therefore, Cisneros could have been convicted of conspiring to assist an inadmissible alien who is *not* an aggravated felon, a lesser crime under § 1324, but not a conspiracy to violate § 1327.

The Government conceded at oral argument that "looking back" it "perhaps" could have charged Cisneros under § 1324.  The Government also noted that it "certainly could have charged an attempt crime, where you can't meet every single element but you do attempt to bring in someone you believe to be an aggravated

4

felon."  The question, though, is whether the elements of the crime with which the Government *actually* charged Cisneros—conspiring to assist an inadmissible, aggravated felon, in violation of 18 U.S.C. § 1327—were supported by legally sufficient evidence.  Because Garcia is not and has never been an aggravated felon, the answer to that question is no.

B

The Government argues that Garcia's *actual* aggravated-felon status is irrelevant, because "[i]mpossibility is not a defense to [a] conspiracy charge." *United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004) (affirming conspiracy conviction arising out of a sting operation where federal agents posed as drug traffickers).  The majority agrees, concluding that because Cisneros was charged with conspiracy, all that matters is whether he *believed* that Garcia was an aggravated felon.  The factual impossibility precedents on which the majority relies might apply in a different § 1327 conspiracy case, but they do not apply here.

In *United States v. Escobar de Bright*, 742 F.2d 1196 (9th Cir. 1984), we held that an individual cannot be convicted of conspiracy where the only other "conspirator" is an undercover, government agent, or where for some other reason there is no "meeting of the minds" with respect to a shared intent to commit the target offense.  *Id.* at 1199.  "Since the act of agreeing is a group act, unless at least two people commit it, no one does."  *Id.* (citation omitted).  Accordingly, we held

5

that "the formal requirements of the crime of conspiracy have not been met unless an individual conspires with at least one bona fide co-conspirator." *Id.*

By analogy, in a § 1327 conspiracy case where the inadmissible alien targeted for assistance is *not* an aggravated felon, it is not enough for one conspirator alone to mistakenly believe the missing status element is present. Instead, "*each conspirator* must have specifically intended that some conspirator commit *each element* of the substantive offense," including the provision of assistance *to an aggravated felon*. *Ocasio*, 136 S. Ct. at 1432 (emphasis altered). Indeed, the Government conceded at oral argument that it must "prove a meeting of the minds as to the essential elements of the crime." When there is no meeting of the minds, "a conviction for conspiracy to commit [the offense] [can]not stand." *United States v. Rosenblatt*, 554 F.2d 36, 39–40 (2d Cir. 1977); *see also Feola*, 420 U.S. at 692 ("[B]ecause the essence of conspiracy is agreement[,] . . . persons cannot be punished for acts beyond the scope of their agreement." (citing *United States v. Crimmins*, 123 F.2d 271, 273 (2d Cir. 1941))).

The Government presented no evidence that Cisneros's co-conspirators—one of whom was Garcia himself—believed that Garcia was an aggravated felon. Instead, the evidence suggests that these individuals merely believed that Garcia was inadmissible. Thus, their agreement to assist Garcia may well have violated § 1324, but they did not agree to commit the specific offense Cisneros (allegedly)

6

agreed to commit: aiding the admission of an aggravated felon.[1]  Because there were no other "bona fide [§ 1327] co-conspirator[s]," *Escobar de Bright*, 742 F.2d at 1199, there was no agreement to violate § 1327.  Accordingly, Cisneros's conviction "[can]not stand." *Rosenblatt*, 554 F.2d at 40.

C

Even if proof that Cisneros (but not his co-conspirators) believed that Garcia was an aggravated felon were sufficient to sustain his conspiracy conviction, the Government presented no evidence that Cisneros harbored this alleged belief about Garcia's aggravated-felon status *in 2013*, the year he agreed to assist Garcia in retrieving his passport from CBP officials.

---

[1] The majority concludes that Cisneros waived this argument by failing to raise it in his opening brief.  But Cisneros clearly *did* raise the argument in his opening brief when he argued that the Government

> failed to show any intentional agreement between Cisneros and the alleged co-conspirators . . . to violate section 1327.  No evidence suggested Cisneros knew when he assisted Garcia that Garcia had been convicted of an aggravated felony.  Indeed, Garcia had *not* been convicted of any aggravated felony . . . .

> Nor did any evidence show Termendzhyan or Garcia agreed with Cisneros to violate § 1327 . . . .  No evidence suggested Termendzhyan believed such assistance would be illegal, or agreed with Cisneros to violate . . . § 1327.  Nor did any evidence indicate that Garcia himself believed he was an aggravated felon . . . .

Appellant's Opening Br. at 21-22.  Accordingly, waiver does not apply.

"[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). "[A] 'reasonable' inference is one that is supported by a chain of logic, rather than . . . mere speculation dressed up in the guise of evidence." *United States v. Navarrette-Aguilar*, 813 F.3d 785, 793 (9th Cir. 2015) (citation omitted). In *Navarrette-Aguilar*, we found that the jury engaged in impermissible speculation when it found that Navarrette conspired to distribute one kilogram of heroin, because "[t]he evidence of historical transactions adduced did not amount to one kilogram," and the jury's determination "that members of the conspiracy would have eventually distributed" that amount was based on "the *pattern* of transactions" rather than the scope of the members' agreement. *Id.* at 787, 797.

The jury's determination here that Cisneros believed Garcia was an aggravated felon was far more speculative. The sole evidence from which the jury inferred this belief was Cisneros's one-word exchange with federal agents in 2017, four years *after* he agreed to assist Garcia in retrieving his passport. In that 2017 conversation, Cisneros responded "Yes" when he was told, incorrectly, that Garcia's convictions for "false checks, fraud, that type of stuff" were "[a]g felon" convictions. But even if this could be interpreted as an admission (which is questionable), all the evidence introduced at trial suggests that in 2013 Cisneros

8

did not, in fact, harbor such a mistaken belief. It is undisputed that Cisneros, a trained immigration agent, looked up Garcia's criminal history *before* he assisted Garcia, and the record he looked at showed no aggravated felony convictions. Furthermore, the Government presented no evidence that anyone (other than the agents themselves in 2017) informed Cisneros that Garcia was an aggravated felon.

In short, no evidence or "chain of logic" supports the majority's supposition that Cisneros mistakenly believed in 2013 that Garcia was an aggravated felon. To illustrate why, imagine if Cisneros had, instead, agreed to rob a 7-11 convenience store. Also imagine that, four years later, federal agents told him that there was a "federally insured ATM machine" inside the 7-11, making Cisneros guilty of conspiracy to rob a federally insured bank, in violation of 18 U.S.C. §§ 371, 2113. Under the majority's holding, if Cisneros responded "yes" to the federal agents' gambit in this hypothetical, then he could be convicted of conspiracy to commit bank robbery based on his statement alone. Furthermore, his conviction would stand regardless of the fact that 7-11 is *not* a federally insured bank, and therefore no substantive § 2113 violation could have occurred. Clearly, this result is wrong.

For the foregoing reasons, I would vacate Cisneros's Count One conviction.

## II

I would also vacate Cisneros's Count Three and Count Four convictions, both of which are premised on the falsity of his answer on the "foreign contacts"

9

portion on his SF-86 security clearance questionnaire. Specifically, question 19 asked:

> Do you have, or have you had, close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?

Cisneros answered "No." On this basis, the Government charged Cisneros with falsity crimes under 18 U.S.C. §§ 1519 (Count Three) and 1001 (Count Four). The majority—following the two other circuit opinions, both unpublished, that have addressed this issue[2]—concludes that question 19 is not "fundamentally ambiguous," and therefore may form the basis for Cisneros's convictions. *See United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003).

Even accepting that question 19 is not fundamentally ambiguous, I would hold that Cisneros's answer was not false. Both of the unpublished decisions addressing this question involved relationships with foreign nationals that were ongoing at the time the defendants filled out their SF-86 forms. By contrast, Cisneros cut ties with Garcia in January 2014, seven months *before* he completed his SF-86 in August 2014. This is significant because, by its plain terms, question

---

[2] *See United States v. Polos*, 723 F. App'x 64, 66 (2d Cir. 2018) (holding that the question regarding "'close and/or continuing contact with foreign nationals within the last 7 years' . . . is not on its face so vague as to suggest that individuals of ordinary intellect could not agree on its meaning"); *United States v. Delgado*, 798 F. App'x 105, 106–07 (9th Cir. 2020) (same).

19 requires disclosure of only those foreign contacts with whom a person *remains* bound by affection, influence, common interests, or obligation—a reading the Government adopted at oral argument.[3]  I would therefore hold that the Government offered insufficient evidence that Cisneros answered question 19 incorrectly, let alone with the "intent to impede, obstruct, and influence an actual or completed investigation," or "knowledge both that the statement was untrue and that his . . . conduct was unlawful"—the mens rea elements for Counts 3 and 4.

Alternatively, I would hold that question 19 is fundamentally ambiguous in the particular circumstances of this case, where the person answering the question had close and/or continuing contacts with a foreign national within the past seven years, but cut off that relationship prior to filling out the SF-86.  "A question is fundamentally ambiguous when 'men of ordinary intelligence' cannot arrive at a mutual understanding of its meaning."  *Culliton*, 328 F.3d at 1078 (citation omitted).  I would note that, at oral argument in this case, five trained appellate lawyers (including the judges of this panel) failed to arrive at a shared understanding of the meaning of question 19.  I would resolve this ambiguity in Cisneros's favor, and vacate his Count Three and Count Four convictions as well.

---

[3] Notably, at trial, the Government adopted the opposite interpretation, arguing that Cisneros "knowingly falsified" his SF-86 by stating he had "[n]o contacts with a foreign national"—leaving out the form's pertinent qualifying language ("within the last seven years with whom you . . . *are* bound by . . . ").

## III

To summarize, Cisneros's Count One conviction should be vacated because the Government offered no evidence that Garcia was an aggravated felon and insufficient evidence that Cisneros and his cohorts believed him to be one. Cisneros's Count Three and Count Four convictions should be vacated because Cisneros did not answer question 19 of his SF-86 falsely. To the extent he did, that question's fundamental ambiguity prevents his convictions.

I respectfully dissent.